## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Lori Chavez-DeRemer, Secretary of
Labor, United States Department
of Labor**

    v.

**FNN Company, Inc. and
Ebenezio Kaizer**

Case No. 1:26-cv-199-PB-AJ
Opinion No. 2026 DNH 024

## <u>MEMORANDUM AND ORDER</u>

Before the court is Secretary of Labor Lori Chavez-DeRemer's motion

for a temporary restraining order ("TRO") enjoining Defendants FNN

Company, Inc. and Ebenezio Kaizer from retaliating against employees who

assert their rights under the Fair Labor Standards Act, 29 U.S.C. § 201, <u>et</u>

<u>seq.</u> (the "FLSA"). Doc. 3 at 1. Specifically, the Secretary seeks a TRO that

would "restrain Defendants and their agents from continuing to violate

Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), and require Defendants to

allow the Secretary to notify Defendants' employees of their rights and

protections under the FLSA." Doc. 3-1 at 2. Because the Secretary is unlikely

to succeed in proving Defendants violated Section 15(a)(3) on the present

record, I deny her motion.

## I.   <u>BACKGROUND</u>

Defendant FNN Company, Inc. is a New Hampshire corporation that provides janitorial services, and Defendant Ebenezio Kaizer is FNN's owner. <u>Id.</u> FNN's employees are janitors who clean retail establishments, including supermarkets, and "routinely are responsible for cleaning multiple stores each night." <u>Id.</u>

On December 15, 2025, the Wage and Hour Division of the United States Department of Labor (the "WHD") opened an investigation into Defendants' compliance with the FLSA and notified Defendants of the investigation. <u>Id.</u> WHD met with Defendants on January 2, 2026 and informed Kaizer that the WHD would be contacting FNN employees for interviews. <u>Id.</u> The Secretary contends that on January 9, 2026, Kazier sent an audio message to a WhatsApp group that included FNN employees. <u>Id.</u> Kaizer's message, as translated, stated:

> Just to let you know, a Brazilian woman from the State will call you to ask about your work and how many stores you handle. I'm warning you to avoid problems: don't say too much. You only handle two stores, understood? Be brief and objective. Answer what she says, but don't go into too much detail, so things don't get more complicated for you or for me. Thank you.

<u>Id.</u> at 3. The Secretary alleges that when Kaizer mentioned "a woman from the State," he was referring to the WHD investigator. <u>Id.</u>

The Secretary alleges that Kazier's audio message was an instruction to employees to provide false information to the WHD investigator. Id. In support of this contention, the Secretary cites Defendants' pay records, which showed that some employees were responsible for cleaning three to five stores, and highlights the fact that multiple employees who were servicing more than two stores had received Kaizer's message. Id.

On the basis of Kaizer's audio message, the Secretary argues Defendants have "tried to coerce their employees into providing materially false information to the WHD" and that these actions constitute a violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3). Id. at 5. She seeks a TRO to restrain Defendants from further violations of Section 15(a)(3). Id. at 2.

## II.  <u>STANDARD OF REVIEW</u>

Whether construed as a motion for a TRO or for a preliminary injunction, the same four factors determine whether a court should act to preserve the status quo in advance of a dispositive ruling. Liu v. Noem, 777 F. Supp. 3d 83, 85-86 (D.N.H. 2025). I must consider (1) "the movant's likelihood of success on the merits;" (2) "whether and to what extent the movant will suffer irreparable harm in the absence of preliminary injunctive relief;" (3) "the balance of relative hardships, that is, the hardship to the nonmovant if enjoined as opposed to the hardship to the movant if no injunction issues;" and (4) "the effect, if any, that either a preliminary

injunction or the absence of one will have on the public interest." Ryan v. U.S. Immigr. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020); see also Osorio-Martinez v. Att'y Gen., 893 F.3d 153, 178-79 (3d Cir. 2018). The first factor weighs "most heavily" in this analysis—so much so that a failure to demonstrate likelihood of success is usually fatal. See Ryan, 974 F.3d at 18.

### III.  ANALYSIS

The First Circuit has held that "if the moving party cannot demonstrate that [she] is likely to succeed in [her] quest, the remaining four factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). As such, I begin by assessing the Secretary's likelihood of success on the merits of her Section 15(a)(3) retaliation claim.

Under Section 15(a)(3) of the FLSA, it is unlawful for a person to "discharge or in any manner discriminate against any employee because such an employee . . . has testified or is about to testify in any . . . proceeding" under or related to the statute. 29 U.S.C. § 215(a)(3). In order to prove a retaliation claim under Section 15(a)(3), a plaintiff must show: (1) that the employee engaged in a statutorily protected activity, (2) the employer subjected the employee to an adverse action, and (3) the adverse action was taken because of the employee's protected conduct. Travers v. Flight Servs. & Sys., Inc., 808 F.3d 525, 531 (1st Cir. 2015).

To satisfy the second prong of the above test, the challenged action must be "materially adverse." Blackie v. State of Me., 75 F. 3d 716, 725 (1st Cir. 1996). Determining whether an alleged action is materially adverse "necessarily requires a case-by-case inquiry" and is examined in "objective terms." Id. The Secretary encourages this Court to assess the second prong under the Burlington Northern standard. Doc. 3-1 at 7. Under Burlington Northern, an action is materially adverse if it "well might have dissuaded a reasonable worker from" engaging in protected activity. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation omitted).[1]

Here, the Secretary argues that the Defendants' audio message, which directed employees to "provide the WHD with false information," constitutes an adverse action under Section 15(a)(3). Doc. 3-1 at 7. She advances a theory of anticipatory retaliation and argues that the message constitutes an

---

[1]    The Secretary concedes that Burlington Northern was a case interpreting Title VII, not Section 15(a)(3) of the FLSA, and that the First Circuit has not yet applied the Burlington Northern standard to an FLSA retaliation claim. Doc. 3-1 at 7 n. 3. However, she argues the standard should apply because the District of Massachusetts has applied the standard to Section 15(a)(3) claims, as have six other Courts of Appeal. Id. (citing Scalia v. F.W. Webb Co., 2021 WL 1565508, at *4 (D. Mass. Apr. 21, 2021); Hollis v. R&R Rests., Inc., 159 F.4th 677, 688 (9th Cir. 2025); Smith v. Haynes & Haynes P.C., 940 F.3d 635, 648–49 (11th Cir. 2019); Pettit v. Steppingstone, Ctr. for the Potentially Gifted, 429 F. App'x 524, 531–32 (6th Cir. 2011) (unpublished); Noack v. YMCA of Greater Hous. Area, 418 F. App'x 347, 353 (5th Cir. 2011) (unpublished); Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010); Darveau v. Detecon, Inc., 515 F.3d 334, 343 (4th Cir. 2008)).

implied threat from Kaizer that he will harm employees if they truthfully participate in the investigation. Id. On the basis of the present record, however, I cannot determine whether Kaizer's audio message is an actionable threat to take adverse action against his employees or an appeal to self interest to encourage his employees to provide false information to the investigation. If it is the latter, I do not doubt that I have the power to direct Defendants to refrain from such actions in the future as part of my ordinary superintendence authority. However, under the Secretary's theory, I do not believe the record is sufficiently strong to show that the audio message is an actionable threat to take "adverse action" under Section 15(a)(3). Because the Secretary cannot satisfy prong two of the Section 15(a)(3) standard, she is unlikely to succeed on the merits of her FLSA claim on the present record.

Although the First Circuit has not yet determined whether the Burlington Northern standard applies to Section 15(a)(3) retaliation claims, I will assume that it does when evaluating the Secretary's argument that the audio message is an "adverse action." The message instructed FNN's employees to not "say too much," make allegedly false statements about the number of stores they cleaned, be "brief and objective," and "[a]nswer what [the investigator] says, but [not] go into too much detail." Doc. 3-1 at 3. Moreover, as the Secretary highlights, Kaizen warned employees that if

employees went into "too much detail," things could "get more complicated for you or for me." Id.

While I do not dispute that these messages could be unlawful directives to make false statements to the WHD, I cannot conclude from the message alone that it qualifies as an actionable threat to take adverse action under Section 15(a)(3). In some circumstances, a threat to take adverse action to deter someone from engaging in protected conduct could satisfy the adverse action requirement. See Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) (holding that "the mere threat of harm can be an adverse action, regardless of whether it is carried out" in a case involving a First Amendment retaliation claim) (emphasis in original). However, as Burlington Northern instructs, "the significance of any given act of retaliation will often depend on the particular circumstances. Context matters." Burlington Northern, 548 U.S. at 69.

In the absence of additional evidence, I cannot say that the Secretary is likely to succeed in showing that Kaizen's audio message "well might have dissuaded a reasonable worker from" participating in the WHD investigation of Defendants. Id. at 68. It is unclear whether the audio message contains an implied threat, and I do not know what, if anything, is being threatened in the message. Thus, the present record does not contain sufficient evidence to permit a finding that the Secretary is likely to succeed in proving that a

7

reasonable worker would have understood the audio message as an actionable threat to take adverse action against him. I will reevaluate this issue after the Defendants have appeared.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, I deny the Secretary's motion for a temporary restraining order without prejudice to her right to seek preliminary relief on a more fully developed record after the Defendants have appeared. Doc. 3.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u>
Paul J. Barbadoro
United States District Judge

March 23, 2026

cc:    Counsel of Record